# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | |
|---|---|
| SOLOMON DANIELS, JR. | CIVIL ACTION NO. 3:11-cv-2112 |
|       LA. DOC #127267 | |
| VS. | SECTION P |
| | |
| | JUDGE ROBERT G. JAMES |
| SECRETARY JAMES LeBLANC, | |
| ET AL. | MAGISTRATE JUDGE KAREN L. HAYES |

### REPORT AND RECOMMENDATION

*Pro se* plaintiff Solomon Daniels, Jr., proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on November 29, 2011. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections (LDOC).  When he filed this complaint he was incarcerated at the East Carroll Detention Center (ECDC), Lake Providence, Louisiana.   He was subsequently transferred to the Riverbend Detention Center (RDC) in Lake Providence on December 6, 2011.

Plaintiff chiefly complains that he is being denied access to the courts. He sued LDOC Secretary James LeBlanc, ECDC Warden Ronnie Harris, the ECDC, the State of Louisiana, and East Carroll Sheriff Mark Shumate praying either for his transfer to an LDOC facility or compensatory damages.  He has also requested appointment of counsel. [Doc. 9] This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaints be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted.

*Background*

As previously noted, plaintiff is an inmate in the custody of the LDOC.  In his original complaint he alleged that by virtue of his imprisonment at ECDC, his "... ability to effectively prepare, complete, and file, litigate and exhaust post conviction relief application, appeals complaints and law suits complaints processes with the courts until a final decision is rendered by the U.S. Supreme Court and such, housing deprives plaintiff access to courts..."  He further alleged that his transfer to the RDC (Phase I, II, or III) or his transfer to the Bossier Correctional Centers (BCC) in Plain Dealing "... would threaten the same ability..."

According to the complaint, the ECDC law library (and presumably the law libraries at RDC and BCC) "... denies plaintiff access to updated sufficient controlling case laws, denies plaintiff access to updated sufficient civil and criminal procedural law books and denies access to law materials and denies access to state and federal constitutional laws and 1983 forms..."  He alleged that the inmates working in the ECDC prison law library advised him that the prison administrators have forbidden them to "issue access of law books or material of any kind etc. to the inmate prison population for them to study, research or prepare law suits."  Plaintiff concluded by suggesting that future mailings to the court may be interfered with by prison administrators once they have discovered that he has filed this complaint.  Plaintiff prayed for his transfer to an LDOC facility, or, in lieu thereof, the payment of $1,000/day for each day housed in "local jails." [Doc. 1]

On January 5, 2012, plaintiff advised of his transfer to RDC; he also submitted a properly executed application to proceed *in forma pauperis* which indicated that he had been housed at RDC since December 6, 2011. [Doc. 5-6]

On January 10, 2012, plaintiff submitted a supplemental complaint in which he claimed that

he lacked access to sufficient funds or to law books, case law, law dictionary, or other sufficient legal law books, materials needed to research the law and prepare his claim.  He claims that had he access to such materials, "it may have possibly [exposed] favorable grounds through case law..."  He asked the Court to issue an emergency order "to protect him from possible physical abuse and or death from [RDC] administration heads and its staff."  He also requested assistance of court-appointed counsel to litigate the instant suit.

He reiterated his complaint that his limited access to law books "... may negatively affect [his] ability to prepare and research law for future claims attacking [his] conviction and the filing of other suits petitioner may intend to pursue through the filing of appeals, application for post-conviction and or habeas corpus."  He indicated that he was aggrieved by the "unlawful recording of his communication" and that he desired to seek review of his criminal conviction by way of an appeal or an application for post-conviction relief but claims that the deficiencies of the law libraries at ECDC and RDC have interfered with such desire to seek review of his conviction.  Plaintiff also alleged that he was sentenced by the Fourth Judicial District Court on August 2, 2011, to serve his sentence in the custody of the LDOC.

Plaintiff also complained that his written grievance was lost or destroyed by RDC administration, and that he was threatened with physical harm or death should he continue to complain about the facility.  He therefore prayed for an emergency transfer to another facility. [Doc. 9]

### *Law and Analysis*

### *1. Screening*

When a prisoner is allowed to proceed *in forma pauperis* in a suit against an officer or

employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. . *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

4

Courts are not only vested with the authority to dismiss a claim based on an indisputably meritless legal theory, but are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

Plaintiff has adequately set forth his claims in an original complaint [Doc. 1] and a supplemental complaint. [Doc. 9] He has provided the factual basis and legal foundation for his claims in an adequate manner and there is no need for additional amendments.  His factual allegations, taken as true for the purposes of this Report and Recommendation, fail to state a claim for which relief may be granted.

## 2. The Defendants

In his original complaint plaintiff named the ECDC as a defendant.  Fed. R. Civ. P. 17(b) provides that the "capacity to sue or be sued shall be determined by the law of the state in which the district court is held."  Thus, Louisiana law governs whether an entity such as a  corrections facility has the capacity to be sued in this action. Under Louisiana law, to possess such a capacity, an entity must qualify as a "juridical person." This term is defined by the Louisiana Civil Code as "... an entity to which the law attributes personality, such as a corporation or partnership." La. Civ.Code Ann. art. 24.  To the extent plaintiff seeks judgment against ECDC (or RDC), he must show that they are juridical persons capable of being sued.  Neither the ECDC nor the RDC are juridical persons capable of being sued.  Plaintiff's complaint against these defendants fails to state a claim for which relief may be granted.

Plaintiff also sued the State of Louisiana.  Under the Eleventh Amendment to the United States Constitution, an unconsenting state is immune from suits seeking monetary damages brought

5

in federal courts by her own citizens as well as citizens of another state. *Edelman v. Jordan*, 415 U.S. 659, 94 S.Ct. 1347 (1974).

Congress has the authority to abrogate this immunity through the Fourteenth Amendment; it has not done so as to claims for deprivation of civil rights under color of state law. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666 (1976).

Thus, absent either consent by the state or congressional action, the State of Louisiana is immune from plaintiff's suit for damages. Louisiana has not waived sovereign immunity and therefore plaintiff's claim for money damages must be dismissed.

### 3. Transfer to an LDOC Facility

Plaintiff claims that as a felon committed to the custody of the LDOC, he is for that reason entitled to be housed in a facility operated by the LDOC and not a local jail or prison.  Under Louisiana law, "any individual subject to confinement in a state adult penal or correctional institution shall be committed to the Louisiana Department of Public Safety and Corrections and not to any particular institution within the jurisdiction of the department. <u>The director of corrections shall assign each newly committed inmate to an appropriate penal or correctional facility. The director may transfer an inmate from one such facility to another, insofar as the transfer is consistent with the commitment and in accordance with treatment, training and security needs established by the department</u>..." See La. R.S.15:824(A).

Plaintiff is an LDOC inmate and therefore his placement is solely within the purview of the LDOC's administration.  Broad discretionary authority must be afforded to prison administrators because the administration of a prison is "at best an extraordinarily difficult undertaking." *Wolff v. McDonnell*, 418 U.S. 539, 566, 94 S.Ct. 2963, 2979, 41 L.Ed.2d 935 (1974) To hold that any

6

substantial deprivation imposed by prison authorities triggers the procedural protections of the Due Process Clause would subject to judicial review a wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts. *Meachum v. Fano*, 427 U.S. 215, 225, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976). "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston*, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948).

Prisoners simply do not have a constitutionally derived liberty interest in being held in any particular institution. *See Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976); *Olim v. Wakinekona*, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *Montanye v. Haymes*, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976); *Adams v. Gunnell*, 729 F.2d 362, 368 (5th Cir. 1984); *Oladipupo v. Austin*, 104 F.Supp.2d 643 (W.D.La. 2000).

Plaintiff is not entitled to an order directing his transfer to any particular prison in the State. His allegation to the contrary fails to state a claim for which relief may be granted.

*4. Grievances*

Plaintiff implies that he is entitled to relief because the defendants interfered with or failed to respond to his prison grievances.  In *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court left prisoners without a federally-protected right to have grievances investigated and resolved. Any right of that nature is grounded in state law or regulation and the mere failure of an official to follow state law or regulation, without more, does not violate constitutional *minima*. See *Taylor v. Cockrell*, 2004 WL 287339 at *1 (5th Cir. Feb.12, 2004) (not designated for publication) (holding that "claims that the defendants violated ... constitutional rights

by failing to investigate ... grievances fall short of establishing a federal constitutional claim"); *Geiger v. Jowers*, 404 F.3d 371 (5th Cir. 2005) (Prisoners do not have a federally protected liberty interest in having their grievances resolved to their satisfaction; any alleged due process violation arising from the alleged failure to investigate prisoner grievances is indisputably meritless); (see also *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 138, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977) (Burger, C.J., concurring) (applauding the institution of grievance procedures by prisons but not suggesting that such procedures are constitutionally required); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996) ("[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause."); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994) ("[T]he constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir.1993) (quotation omitted) (holding that a prison grievance procedure is not a substantive right and "does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment"); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir.1991 *per curiam*) (concluding regulations providing for administrative remedy procedure do not create liberty interests in access to that procedure); and *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir.1988) ("There is no legitimate claim of entitlement to a grievance procedure.").

Since there is no constitutionally protected right to participate in a prison grievance procedure, plaintiff's complaint fails to state a claim for which relief may be granted.

**5. Access to Courts**

Plaintiff's main complaint is that he has been and is being denied his constitutionally protected right of access to the courts. "It has long been recognized that prisoners generally enjoy

the constitutional right of access to the court." *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir.1999).

*See Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Johnson v. Avery*, 393

U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). The right of access to the court is not unlimited,

however, and includes "only a reasonable opportunity to file non-frivolous legal claims challenging

[the prisoners'] convictions or conditions of confinement." *Id.* (citing *Lewis v. Casey*, 518 U.S. 343,

351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)).  Put another way, "[w]hile the precise contours of

a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not

extended this right to encompass more than the ability of an inmate to prepare and transmit a

necessary legal document to a court." *Brewer v. Wilkinson*, 3 F.3d at 821; *Lewis v. Casey*, 518 U.S.

at 351, 116 S.Ct. at 2179-81; *Norton v. Dimazana*, 122 F.3d at 290; and *Eason v. Thaler*, 73 F.3d

1322, 1329 (5th Cir.1996).

        The pleadings and exhibits demonstrate that plaintiff has encountered no problems with

transmitting documents to or receiving documents from this court or any other.  He implies that the

deficiencies in the prison law libraries have inhibited his ability to seek either direct or collateral

review of the conviction which has resulted in his incarceration. According to the pleadings, plaintiff

was convicted on August 2,  2011.  It is unclear whether he or his attorney filed a timely motion for

an appeal of the conviction and sentence. Nevertheless, there is no reason to believe that he would

have been denied the right to appointed appellate counsel should he have made that desire known

to the District Court. Further, to the extent that plaintiff should seek post-conviction relief now, or

following the conclusion of the appellate process, he should be aware that the State of Louisiana

provides forms for such purpose and that prisoners are directed to state <u>facts</u> in support of each claim

and, are specifically directed, "Do not argue points of law." See Supreme Court Rules, Appendix A,

Uniform Application for Post-Conviction Relief.  Thus, the inadequacies complained of should in no way inhibit plaintiff from seeking either direct or collateral review of his conviction and sentence.

Further, even if plaintiff could establish deficiencies in the manner in which access to court is provided by the defendants, in order for him to state a claim that he was denied his constitutional right of access to the courts, he must also "demonstrate[ ] that his position as a litigant was prejudiced by his denial of access to the court." *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir.1996) (*per curiam*) (citing *Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir.1993)). This requirement that a claimant show "actual injury" is "not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354.  In other words, plaintiff, at the very least, must show that he was prevented from filing a non-frivolous pleading.  This he has failed to do.

Since he has failed to demonstrate injury or prejudice,  his access to courts claim must be dismissed for failing to state a claim for which relief may be granted.

### 6. Protective Order

Plaintiff has also requested an emergency order "to protect him from possible physical abuse and or death from [RDC] administration heads and its staff." [Doc. 9] Plaintiff, however, has provided only conclusory allegations to support his claim that he is in danger of harm. As shown above, those conclusive allegations are insufficient to state a claim for which relief may be granted.

### 7. Appointment of Counsel

Finally, plaintiff has requested appointment of counsel to assist him in the litigation of his access to courts claim. Congress has not specifically authorized courts to appoint counsel for plaintiffs proceeding under 42 U.S.C. §1983.  "Generally no right to counsel exists in §1983 actions [but] appointment of counsel should be made as authorized by 28 U.S.C. §1915 where 'exceptional

circumstances' are present." *Robbins v. Maggio*, 750 F.2d. 405 (5th Cir. 1985).  Pursuant to 28 U.S.C. §1915(e)(1), federal courts are given the power to request that an attorney represent an indigent plaintiff.  In the case of *Mallard v. United States District Court for the Southern District*, 490 U.S. 296, 301-302, 109 S.Ct. 1814, 1818, 104 L.Ed.2d 318 (1989) the United States Supreme Court held that federal courts can only request that an attorney represent a person unable to employ counsel because federal courts are not empowered under 28 U.S.C. §1915(e)(1) to make compulsory appointments.

Although courts can request that an attorney represent an indigent plaintiff, the court is not required to make this request in the absence of "exceptional circumstances." *See Ulmer v. Chancellor*, 691 F.2d. 209, 212 (5th Cir. 1982) and *Jackson v. Cain*, 864 F.2d. 1235, 1242 (5th Cir. 1989).  No precise definition of "exceptional circumstances" is available, but the United States Courts of Appeal have provided a litany of factors for lower courts to consider in determining whether the plaintiff is entitled to have the court request that counsel assist him in his suit. It is proper for the court to consider the following factors:  the type and complexity of the case; the plaintiff's ability to adequately present and investigate his case; the presence of evidence which largely consists of conflicting testimony so as to require skill in presentation of evidence and cross-examination; and the likelihood that appointment will benefit the petitioner, the court, and the defendants by "shortening the trial and assisting in just determination." See *Parker v. Carpenter*, 978 F.2d. 190 (5th Cir. 1992), citing *Murphy v. Kellar*, 950 F.2d. at 293, n.14; *see also Ulmer*, 691 F.2d. at 213, and *Jackson*, 864 F.2d. at 1242. Additionally, a court may consider whether a plaintiff has demonstrated the inability to secure private counsel on his own behalf. *See  Jackson*, 864 F.2d. at 1242; *Ulmer*, 691 F.2d. at 213. Plaintiff is not excused from trying to procure counsel for himself.

11

Plaintiff has managed to file an original complaint and a supplemental complaint setting forth his causes of action and requests for relief.  No special legal knowledge is required of plaintiff herein.  Plaintiff's claims are not necessarily atypical of those often asserted in civil rights litigation and are not complex. At this stage of the proceedings he need not be versed in the law so long as he can recite the facts with sufficient clarity, and that he has done so far.  Finally, plaintiff has not demonstrated that he has tried and been unsuccessful in securing representation on his own.

Accordingly, plaintiff's request for appointment of counsel should be denied as the circumstances presented herein are not "exceptional" so as to  warrant the appointment of counsel.

### *Conclusion and Recommendation*

Therefore

**IT IS ORDERED THAT** plaintiff's Motion for Appointment of Counsel be **DENIED;** and,

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint [Doc. 1] and, his Supplemental Complaint [Doc. 9] – including his request for protective order and immediate transfer [Doc. 9] – be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days**

following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall

bar an aggrieved party from attacking either the factual findings or the legal conclusions

accepted by the District Court, except upon grounds of plain error.  *See, Douglass v. United*

*Services Automobile Association*, 79 F.3d 1415 (5th Cir.  1996).

    In Chambers, Monroe, Louisiana, March 15, 2012.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE

13